IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | No. 08 CR 106 |
| ) | |
| RAYMIE HENDERSON, NOWELL PATRICK ) | |
| LANDO and AUGUSTUS WRIGHT, ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Defendants Raymie Henderson, Nowell Patrick Lando, and Augustus Wright are charged with one count of conspiracy to launder money, in violation of 18 U.S.C. § 1956(h), 1956(a)(1)(B)(i), and 1957(a). Henderson is separately charged with participating in a monetary transaction in criminally-derived property, in violation of 18 U.S.C. § 1957(a). The defendants move to dismiss the indictment. For the following reasons we deny their request.

### BACKGROUND [1]

An unidentified individual ("Individual A"), who was known to Wright to be a narcotics dealer, gave money to Wright. The purpose of the exchange was so that Wright would "clean up" the money by using it to purchase and renovate real estate. Wright gave some of the money to Lando in order to purchase and renovate real estate, with the understanding that the title to the real estate would be put in Wright's name to conceal and disguise Individual A's ownership interests in the property. Throughout 2001, Lando and his

---

[1] Our recitation of the background surrounding the alleged conspiracy comes from a combination of the allegations in the indictment and the public records concerning the transfers of the property at issue. *See United States v. Pitt-Des Moines, Inc.*, 970 F.Supp. 1346, 1349 (N.D. Ill. 1997) (holding that courts may take judicial notice of matters of public record when analyzing a motion to dismiss an indictment). We find it unnecessary to rely on the affidavit of Matthew A. Flamm in order to resolve this matter. Accordingly, we do not address the government's objection to that affidavit.

business partner, Henderson, used the money to purchase and renovate four parcels of real estate. The title for each parcel listed R & P Development, the name of Lando and Henderson's company.

On May 28, 2002, Henderson gave Wright a warranty deed for a fifth parcel of land located at 10951 S. Michigan Avenue in Chicago. This deed was recorded with the Cook County Recorder of Deeds on October 18, 2002. When Henderson gave Wright the warranty deed, he did not have title to the property, but he possessed a contractual right to purchase the property from Sherwyn Real Estate, the title-holder. Sherwyn Real Estate conveyed title to the Michigan Avenue property by quit claim deed to Henderson on November 25, 2002. That deed was recorded on December 3, 2002. On February 7, 2003, Henderson executed a quit claim deed to Wright. The face of this deed indicates that the purpose of the deed is to "correct and modify previously recorded deed." This corrected deed was recorded by the Cook County Recorder of Deeds on April 24, 2003. The indictment charging the defendants was returned by the grand jury on February 5, 2008.

## ANALYSIS

We examine each of the counts in turn. Defendants move the court to dismiss Count I because the indictment was returned after the statute of limitations on the charged crime expired. The five-year statute of limitations set forth in 18 U.S.C. § 3282 governs actions brought under § 1956(h). United States v. LaSpina, 299 F.3d 165, 173 (2d Cir. 2002). The statute of limitations "normally begin[s] to run when the crime is complete." Toussie v. United States, 397 U.S. 112, 115 (1970) (quoting Pendergast v. United States, 317 U.S. 412, 418 (1943)); see also United States v. Yashar, 166 F.3d 873, 875 (7th Cir. 1999). For the crime of conspiracy, the statute of limitations does not begin to run until the point at which the

conspiracy is terminated, either by abandonment or success. *See* <u>United States v. Maloney</u>, 71 F.3d 645, 659 (7th Cir. 1995) (citing <u>United States v. McKinney</u>, 954 F.2d 471, 475 (7th Cir. 1992)). Defendants argue that the charged conspiracy was complete on November 25, 2002, when, under the doctrine of after-acquired title[2], Wright obtained equitable title to the Michigan Avenue property. Therefore, the defense contends that any indictment would have to be returned by November 25, 2007. The government argues that the conspiracy lasted until at least February 7, 2003, when Henderson filed the corrected deed and therefore the indictment was timely returned.

We cannot determine if a conspiracy is successful until we have defined the scope of the conspiracy. *See* <u>LaSpina</u>, 299 F.3d at 173 (citing <u>Grunewald v. United States</u>, 353 U.S. 391, 397 (1957)). Ultimately, defining the scope of the conspiracy is a question of fact for the jury. *See* <u>United States v. Sharpe</u>, 193 F.3d 852, 867 (5th Cir. 1999) (explaining that scope of the conspiracy and membership in it are questions of fact for the jury). But in the context of a motion to dismiss, we look to the indictment to determine the scope of the conspiracy as alleged.

At its most basic level, Count 1 of the indictment alleges that the three defendants conspired to violate 28 U.S.C. §§ 1956 and 1957. In other words, it alleges that they conspired to knowingly enter into financial transactions with Individual A's drug proceeds in order to conceal the fact that funds were, in fact, drug proceeds, 18 U.S.C. § 1956(a)(1)(B)(i), and that

---

[2] 765 ILCS 5/7 provides that "[i]f any person shall sell and convey to another, by deed or conveyance, purporting to convey an estate in fee simple absolute, in any tract of land of real estate, lying and being in this state, not then being possessed of the legal estate or interest therein at the time of the sale and conveyance, but after such sale and conveyance the vendor shall become possessed of and confirmed in the legal estate to the land or real estate so sold or conveyed, it shall be taken and held to be in trust and for the use of the grantee or vendee; and the conveyance aforesaid shall be held and taken, and shall be as valid as if the grantor or vendor had the legal estate or interest, at the time of said sale or conveyance." This is commonly referred to as the doctrine of after-acquired title. *See* <u>Tompkins State Bank v. Niles</u>, 127 Ill. 2d 209, 211 (1989).

they conspired to enter into monetary transactions with more than $10,000 in drug proceeds, 18 U.S.C. § 1957(a). The government argues that the scope of the conspiracy was to "clean up" Individual A's money and, therefore, Wright's continued possession of title to the Michigan Avenue property on behalf of Individual A continued the conspiracy. But we cannot agree with such an expansive definition. *See* Grunewald, 353 U.S. at 404 (explaining that the Court has "repeatedly warned that we will view with disfavor attempts to broaden the already pervasive and wide-sweeping nets of conspiracy prosecutions.").

The language in both the indictment and the statutes is more specific. Both refer to "transactions," specifically "financial transactions" and "monetary transactions." A transaction, by its nature, is a discreet occurrence. *See* 18 U.S.C. § 1956(c)(3) ("the term 'transaction' includes a purchase, sale, loan, pledge, gift, transfer, delivery, or other disposition . . ."); *id.* § 1956(c)(4) ("the term 'financial transaction' means (A) a transaction which in any way or degree affects interstate or foreign commerce (i) involving the movement of funds by wire or other means or (ii) involving one or more monetary instruments . . ."); *id.* § 1957(f)(1) ("the term 'monetary transaction' means the deposit withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument . . . ."). We agree with the court in LaSpina, that the transactions involving unlawfully obtained property are the illegal objectives under the money laundering statutes and thus "a conspiracy to engage in such transactions continues as long as one or more conspirators engages in monetary transactions as contemplated by the conspiratorial agreement." LaSpina, 299 F.3d at 174.

But we also disagree with the defendants' position that the conspiracy ended on November 25, 2002, when Wright obtained equitable title to the Michigan Avenue property.

Such a position is far too literal an interpretation of the facts alleged in the indictment and reported by the public record. Although Wright may have obtained equitable title to the Michigan Avenue property on November 25, 2002, we have no trouble determining, for purposes of a motion to dismiss, that the corrected deed Henderson executed on February 7, 2003, and recorded on April 24, 2003, was an act in furtherance of the conspiracy that demonstrates the *agreement* to enter into money laundering transactions was still in effect until at least that point. Although no funds were exchanged with the execution of the February 7, 2003 deed, that deed corrects the warranty deed that is the underlying money laundering transaction. It is hard to fathom how the corrected deed could be anything but an act to further "the original aims of the conspiracy to 'conceal' and 'disguise' the 'nature, source, the ownership or control' of the proceeds." LaSpina, 299 F.3d at 175 (internal citations omitted). Defendants concede as much in their reply brief when they explain that the February 7, 2003, deed "was given to estop Henderson and all persons in privity with him from later denying that the interest Wright previously obtained in 10951 S. Michigan on May 28, 2002 (when Sherwyn Real Estate was the actual titleholder of the property) was effectively conveyed." (Def.'s Rep. at 8.)

We briefly note that the jury will be the ultimate arbiter of the scope of the conspiracy and the date on which the conspiracy terminated, and defendants are not precluded from making the arguments to the jury. But to the extent that we are ruling on the motion to dismiss, we are confident that the February 7, 2003, warranty deed constitutes an act in furtherance of the conspiracy sufficient to bring the conspiracy within the statute of limitations' period.

Henderson moves the court to dismiss Count II of the indictment because the count fails

to allege a transaction involving a monetary instrument that moved "by, through, or to a financial institution." For this argument he relies entirely on the definition of "monetary transaction" found in 18 U.S.C. § 1957(f).[3]

"'The test for determining the sufficiency of the indictment is whether the indictment sets forth the elements of the offense charged and sufficiently apprises the defendant of the charges to enable him to prepare for trial.'" United States v. Westmoreland, 240 F.3d 618, 633 (7th Cir. 2001) (quoting United States v. Garcia-Geronimo, 663 F.2d 738, 743 (7th Cir. 1981)). Further, it is not necessary to "spell out" each element in the indictment if each is instead "present in context." Westmoreland, 240 F.3d at 633 (quoting United States v. Smith, 223 F.3d 554, 571 (7th Cir. 2000)); see also United States v. Martinez, 981 F.2d 867, 872 (6th Cir. 1992) (indictment is constitutionally sufficient if it alleges the appropriate section of the United States Code, even if it does not allege the express element required).

In this case, the government is required to show probable cause to believe that Henderson (1) engaged in a monetary transaction, (2) with property valued at more than $10,000 that was derived from unlawful activity, and (3) that he knew the property was derived from unlawful activity. Count II indicates which statute Henderson has allegedly violated and it sets forth all three elements. It alleges that Henderson sold property at 203 E. 17th Street in Chicago Heights, Illinois, for approximately $92,500, and that the property was derived from the proceeds of drug trafficking. We find that although the indictment does not identify a specific financial institution, it provides enough information to sufficiently apprise Henderson of the charges he is facing and to allow him to adequately prepare for trial.

---

[3] As stated above, 18 U.S.C. § 1957(f)(1) provides "the term 'monetary transaction' means the deposit withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument . . . by, through, or to a financial institution . . . ."

## CONCLUSION

For the reasons stated above, the defendants' motions to dismiss the indictment are denied.

_____
JAMES B. MORAN
Senior Judge, U. S. District Court

\_June 12\_, 2008.